IN THE UNITED STATES DISTRICT COURT
FOR THE EASTERN DISTRICT OF TEXAS
SHERMAN DIVISION

| | |
|---|---|
| HOMER PRICE, § | |
| § | |
| Plaintiff, § | |
| § | |
| v. § | Civil Action No. 4:21-cv-729-SDJ-KPJ |
| § | |
| COLLIN COUNTY DETENTION § | |
| FACILITY, SGT. AGAN, and LT. § | |
| WEST, § | |
| § | |
| Defendants. § | |

**REPORT AND RECOMMENDATION**
<u>**OF UNITED STATES MAGISTRATE JUDGE**</u>

The following motions (together, the "Motions") are pending before the Court:

1. Defendant Collin County Detention Facility's (the "Detention Facility") Motion to Dismiss (the "Detention Facility's Motion") (Dkt. 14); and

2. Defendants Sgt. Marshall Agan ("Sgt. Agan") and Lt. Sheri West's ("Lt. West", and together with Sgt. Agan, the "Officers") Motion to Dismiss (the "Officers' Motion") (Dkt. 15).

Having considered the filings and the relevant law, the Court recommends the Detention Facility's Motion (Dkt. 14) be **GRANTED** and Plaintiff's claims against the Detention Facility be **DISMISSED WITH PREJUDICE**. The Court recommends the Officers' Motion (Dkt. 15) be **GRANTED IN PART**, Plaintiff's claims against Sgt. Agan and Lt. West be **DISMISSED WITHOUT PREJUDICE**, and Plaintiff be granted leave to amend his claims against Sgt. Agan and Lt. West.

## I. BACKGROUND

Plaintiff Homer Price ("Plaintiff"), proceeding *pro se* and *in forma pauperis*, commenced this civil rights lawsuit on September 21, 2021, against the Detention Facility, Sgt. Agan, and Lt. West (collectively, "Defendants"). *See* Dkt. 1. Plaintiff's claims against Defendants stem from an incident that occurred on July 25, 2021, at the Detention Facility, where Plaintiff was being held while awaiting trial in a state criminal proceeding.[1] *See State v. Price*, No. 380-81702-2021 (380th Dist. Ct., Collin County, Tex. filed Apr. 20, 2021).

In his Complaint, Plaintiff alleges that he was involved in a physical altercation with another inmate, Joshua James ("James"), on July 25, 2021, "on two row [sic] in front of 28 cell on [sic] Pod 1C" at the Detention Facility. *See* Dkt. 1 at 4. Plaintiff contends James tackled and pinned Plaintiff to the ground. *See id*. Plaintiff asserts James then wrapped his left arm around Plaintiff's neck such that Plaintiff could no longer move. *See id.* According to Plaintiff, Sgt. Agan and Lt. West came upstairs where the altercation was taking place, at which point Plaintiff alleges Sgt. Agan left Lt. West behind, "picked up speed . . . and with full force lunge[d] forward in stride and tackled inmate Joshua James." *Id.* Plaintiff claims Sgt. Agan tackled James "with so much force [that] the impact caused [Plaintiff's] chest and left side ribs to have [a] deep contusion and a right fracture hand [sic] . . . ." *Id.* Lt. West then allegedly approached Plaintiff and asked him "what was hurting," to which Plaintiff responded that Sgt. Agan "did it and my chest its [sic] hurting bad." *Id.* at 6. Plaintiff asserts Lt. West responded that Sgt. Agan "didn't mean to do it." *Id.* Plaintiff alleges that Lt. West "showed no attention or care towards [Plaintiff's] injury" and only tried to "de-emphasize the whole situation at hand." *Id.* at 3, 6.

---

[1] The Court takes judicial notice of Plaintiff's criminal proceedings in state court. Courts may judicially notice facts that "[are] generally known within the trial court's territorial jurisdiction" or "can be accurately and readily determined from sources whose accuracy cannot reasonably be questioned." FED. R. EVID. 201(b).

2

As a result of the altercation, Plaintiff asserts he was "seriously harmed" and seeks "money for the harm [he] suffered," reimbursement of his "attorney and court fees and medical fees," and punitive damages against Defendants. *Id.* at 4, 6.

On February 25, 2022, Defendants filed the Motions (Dkts. 14, 15) that are presently before the Court. On March 28, 2022, the Court granted Plaintiff's motion for an extension of time until April 15, 2022, to respond to the Motions. *See* Dkt. 19. To date, Plaintiff has failed to respond to the Motions.[2]

## II. APPLICABLE LEGAL STANDARDS

### A. Motions to Dismiss under Fed. R. Civ. P. 12(b)(6)

Federal Rule of Civil Procedure 12(b)(6) allows a defendant to move for dismissal of an action if the plaintiff fails to state a claim upon which relief can be granted. FED. R. CIV. P. 12(b)(6). Because dismissals under Rule 12(b)(6) are disfavored, the Court must accept all well-pleaded facts in the plaintiff's complaint as true, "even if doubtful or suspect," and view them in the light most favorable to the plaintiff. *Peña Arita v. United States*, 470 F. Supp. 3d 663, 680 (S.D. Tex. 2020). However, the Court does not accept as true "conclusory allegations, unwarranted factual inferences, or legal conclusions." *Ferrer v. Chevron Corp.*, 484 F.3d 776, 780 (5th Cir. 2007) (quoting *Plotkin v. IP Axess Inc.*, 407 F.3d 690, 696 (5th Cir. 2005)).

A claim will survive an attack under Rule 12(b)(6) if, considering all well-pleaded facts, the complaint states a plausible claim for relief, rather than "the mere possibility of misconduct." *Ashcroft v. Iqbal*, 556 U.S. 662, 679 (2009). The well-pleaded facts must allow the Court to "draw

---

[2] On June 29, 2022, Plaintiff contacted the Clerk's Office to check on the status of his case. *See* Dkt. Entry for June 29, 2022. Upon learning that responses were due, Plaintiff indicated that he would mail copies of his responses to the Clerk's Office. *See id.* On August 1, 2022, Plaintiff sent correspondence in an effort to explain his failure to file responsive briefing. Six months have elapsed since the Motions were filed, however, and Plaintiff has not filed responsive briefing, despite being given an extension of time to do so. *See* LOCAL R. CV-7(e) (providing that a party opposing a motion has fourteen days from the date the motion was served in which to file a response).

the reasonable inference that the defendant is liable for the misconduct alleged." *Id.* at 678. "Determining whether a complaint states a plausible claim for relief will . . . be a context-specific task that requires the reviewing court to draw on its judicial experience and common sense." *Id.* When considering a motion to dismiss for failure to state a claim, the Court's review is limited to the complaint, any document attached to the complaint, and any document attached to the motion to dismiss that is central to the claim and referenced by the complaint. *See Lone Star Fund V (U.S.), L.P. v. Barclays Bank PLC*, 594 F.3d 383, 387 (5th Cir. 2010) (citing *Collins v. Morgan Stanley Dean Witter*, 224 F.3d 496, 498–99 (5th Cir. 2000)).

The Court is also mindful that it "must construe the pleadings of *pro se* litigants liberally to prevent the loss of rights due to inartful expression." *Perez v. Dall. Cnty. Jail*, No. 3:20-cv-01761, 2022 WL 1215781, at *2 (N.D. Tex. Mar. 31, 2022) (internal citations omitted); *see also Andrade v. Gonzales*, 459 F.3d 538, 543 (5th Cir. 2006). But "liberal construction does not require that the Court . . . create causes of action where there are none.'" *Rolan v. LaSalle Sw. Corr.*, No. 3:20-cv-2842, 2021 WL 5568168, at *3 (N.D. Tex. Nov. 1, 2021) (quoting *Smith v. CVS Caremark Corp.*, No. 3:12-cv-2465, 2013 WL 2291886, at *8 (N.D. Tex. May 23, 2013)).

### B. Qualified Immunity

"The doctrine of qualified immunity protects government officials 'from liability for civil damages insofar as their conduct does not violate clearly established statutory or constitutional rights of which a reasonable person would have known.'" *Pearson v. Callahan*, 555 U.S. 223, 231 (2009) (quoting *Harlow v. Fitzgerald*, 457 U.S. 800, 818 (1982)). "Qualified immunity gives government officials breathing room to make reasonable but mistaken judgments," and "protects 'all but the plainly incompetent or those who knowingly violate the law.'" *Messerschmidt v. Millender*, 565 U.S. 535, 546 (2012) (internal quotations and citations omitted). Thus, "the

immunity issue must be resolved at the earliest possible stage of the litigation since it entails an entitlement to immunity from suit and not merely a defense to liability." *Gibson v. Rich*, 44 F.3d 274, 277 (5th Cir. 1995) (citing *Hunter v. Bryant*, 502 U.S. 224, 226 (1991)).

The plaintiff has the burden to demonstrate the inapplicability of the qualified-immunity defense. *See McLin v. Ard*, 866 F.3d 682, 689 (5th Cir. 2017); *see also McIntosh v. Partridge*, 540 F.3d 315, 323 n.8 (5th Cir. 2008). To rebut a defendant's claim of qualified immunity, the plaintiff must show: (1) the official's conduct violated the plaintiff's constitutional right, and (2) the official's conduct was objectively unreasonable in light of clearly established law at the time of the violation. *McLin*, 866 F.3d at 689 (citing *Whitley v. Hanna*, 726 F.3d 631, 638 (5th Cir. 2013)); *Tucker v. City of Shreveport*, 998 F.3d 165, 173 (5th Cir. 2021). "Courts may address these two elements in either order, and need not proceed to the second where the first is resolved in the negative." *Thompson v. Mercer*, 762 F.3d 433, 437 (5th Cir. 2014) (citing *Lytle v. Bexar Cnty., Tex.*, 560 F.3d 404, 409–10 (5th Cir. 2009)).

A right is clearly established if the "contours of the right" are "sufficiently clear that a reasonable official would understand that what he is doing violates that right." *Terwilliger v. Reyna*, 4 F.4th 270, 284 (5th Cir. 2021) (citation omitted). This inquiry turns on whether the defendant's actions were objectively reasonable in light of the clearly established law. *See Venzor v. Collin Cnty, Tex.*, No. 4:20-cv-318, 2022 WL 666989, at *8 (E.D. Tex. Feb. 16, 2022) (citing *Gates v. Tex. Dep't of Protective and Regul. Servs.*, 537 F.3d 404, 419 (5th Cir. 2008)). "However, even when a right is clearly established, the plaintiff must show that the official's conduct was objectively unreasonable." *Id.* at *9. "While an exact case on point is not required, the confines of the officers' violation must be 'beyond debate,'" and "[b]road general propositions are not enough to overcome qualified immunity." *Cope v. Cogdill*, 3 F.4th 198, 205 (5th Cir. 2021).

## III. ANALYSIS

### A. The Detention Facility's Motion

In his complaint, Plaintiff alleges that the Detention Facility "failed obtain structure [sic] being I got seriously harmed under Collin County care by supposedly noble official who harmed me [sic.]"[3] The Detention Facility argues in its Motion to Dismiss that it is a non-jural entity and cannot be sued. *See* Dkt. 14. The Court agrees.

"A plaintiff may not bring a claim against a governmental agency or department unless it enjoys a separate and distinct legal existence." *McGrew v. City of Wichita Falls*, No. 3:14-cv-679, 2015 WL 3528236, at *6 (N.D. Tex. June 4, 2015) (citing *Darby v. Pasadena Police Dep't*, 939 F.2d 311, 313–14 (5th Cir. 1991)). "State agencies that may sue and be sued are known as jural entities; non-jural entities are not subject to suit." *Id.* at *6. The capacity of a county or city department to be sued is determined by the state where the district court is located. *See Darby*, 939 F.2d at 313; *see also* FED. R. CIV. P. 17(b)(3).

Because this Court sits in Texas, it must apply Texas law to determine whether the Detention Facility can be sued. *See id.* This Court has repeatedly found that the Detention Facility is a non-jural entity. *See, e.g.*, *Newman v. Collin Cnty. Det. Facility*, No. 4:10-cv-463, Dkt. 37 (E.D. Tex. Feb. 7, 2011), *R. & R. adopted*, Dkt. 39 (E.D. Tex. Mar. 3, 2011), *appeal dismissed*, Dkt. 52 (5th Cir. Aug. 17, 2011); *Marr v. Collin Cnty. Det. Ctr.*, No. 4:20-cv-273, 2021 WL 4168432, at *2–3 (E.D. Tex. July 23, 2021) (finding the Detention Facility is a non-jural entity). The Complaint contains no allegation that Collin County has taken explicit steps to grant the Detention Facility with jural authority. *See Darby*, 939 F.2d at 313–14; *see also Charboneau v.*

---

[3] Although Plaintiff's Complaint references "Collin County" at times, Plaintiff explicitly names the Detention Facility as a Defendant alongside Lt. West and Sgt. Agan. *See* Dkt. 1 at 1, 3. Plaintiff also lists the Detention Facility mailing address throughout the Complaint. *Id.*

*Davis*, No. 4:13-cv-678, 2017 WL 9250306, at *6 (E.D. Tex. Feb. 16, 2017). Thus, even if the Court takes all of Plaintiff's allegations against the Detention Facility as true, Plaintiff has failed to state a claim upon which relief can be granted. *Id.*

Furthermore, because Collin County has not granted the Detention Facility with jural authority, it would be futile to grant Plaintiff an opportunity to replead with respect to the Detention Facility. Accordingly, because the Detention Facility has no separate jural existence and is not a suable entity, the Court recommends the Detention Facility's Motion be granted.

### B. The Officers' Motion

In their Motion to Dismiss, Sgt. Agan and Lt. West argue that Plaintiff has failed to state a claim for relief under Rule 12(b)(6) and, in any event, Plaintiff is barred from recovery under the doctrine of qualified immunity. *See* Dkt. 15. Plaintiff's claims against Sgt. Agan and Lt. West are analyzed separately below.

#### 1. Plaintiff's Claim Against Sgt. Agan

Based on Plaintiff's allegation that Sgt. Agan used "unacceptable force which cause[d] major damage" to him, *see* Dkt. 1 at 3, the Court construes Plaintiff's claim against Sgt. Agan as an excessive force claim brought under 42 U.S.C. § 1983. Because Plaintiff was a pretrial detainee at the time of the July 25, 2021 altercation, Plaintiff's excessive force claim lies under the Fourteenth Amendment.[4] *See Hare v. City of Corinth, Miss.*, 74 F.3d 633, 639 (5th Cir. 1996) ("The constitutional rights of a pretrial detainee, on the other hand, flow from both the procedural and substantive due process guarantees of the Fourteenth Amendment.").

---

[4] According to the state court docket, Plaintiff's first appearance was on May 13, 2021—approximately two months prior to the altercation at issue in this case—and his case did not conclude until June 2022. *See State v. Price*, No. 380-81702-2021 (380th Dist. Ct., Collin County, Tex. filed Apr. 20, 2021). Thus, Plaintiff was a pretrial detainee at the time of the July 25, 2021 altercation. *See Bell v. Wolfish*, 441 U.S. 520, 523 (1979) (defining pretrial detainees as "those persons who have been charged with a crime but who have not yet been tried on the charge").

"Force against a pretrial detainee is 'excessive' and a violation of the Fourteenth Amendment when the force was objectively unreasonable." *Fairchild v. Coryell Cnty.*, 40 F.4th 359, 362–63 (5th Cir. 2022) (citing *Kingsley v. Hendrickson*, 576 U.S. 389, 396–97 (2015)). To defeat qualified immunity and prevail on an excessive force claim under the Fourteenth Amendment, a pretrial detainee must show that the defendants applied force in a manner that was "not rationally related to a legitimate nonpunitive governmental purpose" or that the actions were "excessive in relation to that purpose." *See Kingsley*, 576 U.S. at 398 (quoting *Bell v. Wolfish*, 441 U.S. 520, 561 (1979)). The "objective reasonableness" inquiry "turns on the facts and circumstances of each particular case and various factors may bear on the reasonableness or unreasonableness of the force used." *See Welsh v. Correct Care Recovery Sols.*, 845 F. App'x 311, 317 (5th Cir. 2021) (quoting *Kingsley*, 576 U.S. at 397). These factors consist of:

> the relationship between the need for the use of force and the amount of force used; the extent of the plaintiff's injury; any effort made by the officer to temper or to limit the amount of force; the severity of the security problem at issue; the threat reasonably perceived by the officer; and whether the plaintiff was actively resisting.

*Fairchild*, 40 F.4th at 363 (quoting *Kingsley*, 576 U.S. at 397). The Court "must assess the reasonableness of the force from the perspective of a jailer who is often forced to make split-second decisions in tense situations." *Id.* (citing *Kingsley*, 576 U.S. at 399). "A court must also account for the legitimate interests that stem from the government's need to manage the facility in which the individual is detained, appropriately deferring to policies and practices that in the judgment of jail officials are needed to preserve internal order and discipline and to maintain institutional security." *Kingsley*, 576 U.S. at 397 (cleaned up).

Applying the *Kingsley* factors here, the Court finds that only the second factor—the extent of Plaintiff's injury—weighs in Plaintiff's favor, as Plaintiff alleges that he suffered a fractured right hand, deep contusion to his chest, and a rib injury. *See Galada v. Payne*, 421 F. App'x 460,

8

462 (5th Cir. 2011) (stating that for purposes of an excessive force claim, pretrial detainees must show that they "suffered at least some form of injury that [wa]s more than de minimis"). The fifth factor—whether Plaintiff was actively resisting—is neutral as the Complaint is silent as to whether Plaintiff was resisting directives from prison officials.

The remaining *Kingsley* factors—(1) the relationship between the need for the use of force and the amount of force used, (2) any effort made by the officer to temper or limit the amount of force, and (3) the severity of the security problem at issue—weigh in Sgt. Agan's favor. Plaintiff does not allege that Sgt. Agan sought to use any force against Plaintiff. Rather, Plaintiff maintains that Sgt. Agan's use of force was directed solely at James who was restraining Plaintiff. Because of Plaintiff's vulnerable position pinned down on the ground with James's arm around his neck, a reasonable officer could believe that some use of force was objectively reasonable due to the threat presented by James coupled with Plaintiff's inability to move. *Cf. Johnson v. Johnson*, 694 F. App'x 945, 946 (5th Cir. 2017) ("It is well established that prison officials have a constitutional duty to protect prisoners from violence at the hands of their fellow inmates."). Additionally, the altercation could reasonably be interpreted as a threat to institutional security and the safety of others because it took place in a common space outside of prison cells, thereby justifying the use of some degree of force by Sgt. Agan to dissipate the threat and regain institutional order. *See Kingsley*, 576 U.S. at 399 (recognizing that "[r]unning a prison is an inordinately difficult undertaking" and that "safety and order at these institutions requires the expertise of correctional officials, who must have substantial discretion to devise reasonable solutions to the problems they face" (internal citations omitted)). Finally, Sgt. Agan's force was tempered as Plaintiff does not allege Sgt. Agan continued using force after removing James and regaining control.

Upon application of the *Kingsley* factors, the Court finds that Plaintiff's allegations fail to establish that Sgt. Agan's actions were objectively unreasonable. As such, Plaintiff has failed to plead a constitutional violation sufficient to support an excessive force claim under the Fourteenth Amendment. Because there is no alleged violation of a constitutional right by Sgt. Agan, the Court finds that Sgt. Agan is entitled to qualified immunity in the alternative. *McLin*, 866 F.3d at 68. Based on the foregoing, the Court recommends dismissing Plaintiff's claim against Sgt. Agan.

**2. Plaintiff's Claim Against Lt. West**

Plaintiff does not allege in his Complaint that Lt. West used any force against him; rather he alleges that Lt. West failed to intervene and "neglected the fact that [Plaintiff] was seriously harmed." *See* Dkt. 1 at 3. The Court therefore construes Plaintiff's claim against Lt. West as a Section 1983 claim based on a bystander liability theory. *See, e.g.*, *Hamilton v. Kindred*, 845 F.3d 659, 663 (5th Cir. 2017).

An officer may be liable under Section 1983 in an excessive force case under a theory of bystander liability if the officer: (1) knows a fellow officer is violating an individual's constitutional rights; (2) has a reasonable opportunity to prevent the harm; and (3) chooses not to act. *See Hamilton*, 845 F.3d at 663; *Whitley v. Hanna*, 726 F.3d 631, 646 (5th Cir. 2013). "The rationale underlying the bystander liability theory is that a bystanding officer, by choosing not to intervene, functionally participates in the unconstitutional act of his fellow officer." *Whitley*, 726 F.3d at 647 (internal citation omitted). However, bystander liability arises only where the plaintiff alleges and proves another officer's use of excessive force. *Kitchen v. Dall. Cnty.*, 759 F.3d 468, 477 (5th Cir. 2014), *abrogated on other grounds*, *Kingsley*, 576 U.S. at 389. Furthermore, mere presence at the scene is insufficient to render an officer legally responsible under a bystander liability theory. *See Whitley*, 726 F.3d at 646–47; *see Blakely v. Kelly*, No. 3:16-cv-2801, 2020

10

WL 890383, at *15 (N.D. Tex. Jan. 21, 2020), *R. & R. adopted*, 2020 WL 888522 (N.D. Tex. Feb. 24, 2020) (holding that "mere presence at the scene, without more, does not by some mysterious alchemy" render an officer "legally responsible under section 1983 for the actions of a fellow officer.").

Here, as detailed above, Plaintiff has failed to allege that Sgt. Agan violated Plaintiff's constitutional rights. Accordingly, there can be no bystander liability claim against Lt. West. However, even if Plaintiff had sufficiently alleged an excessive force claim against Sgt. Agan, Plaintiff's allegations concerning Lt. West are insufficient to state a bystander liability claim. In his Complaint, Plaintiff alleges that Sgt. Agan "left Lt. West behind" before he reached Plaintiff and James, and began applying force to end the altercation. Thus, there is no indication that Lt. West was even present when Sgt. Agan applied force or that Lt. West was presented with an opportunity to intervene, and failed to do so. Even if she was present, Lt. West's mere presence, without more, is insufficient to render her legally responsible for Sgt. Agan's actions. The Court therefore finds that Plaintiff has failed to state a claim for relief against Lt. West under a theory of bystander liability. Because Plaintiff has failed to allege that Lt. West violated a constitutional right, the Court also finds in the alternative that she is entitled to qualified immunity. Accordingly, the Court recommends dismissing Plaintiff's claim against Lt. West.

### 3. Leave to Amend

As a final matter, the Court considers whether Plaintiff should be afforded an opportunity to amend his claims against Sgt. Agan and Lt. West. Generally, a *pro se* plaintiff should be allowed to amend his complaint before it is dismissed. *Brewster v. Dretke*, 587 F.3d 764, 767–68 (5th Cir. 2009) (per curiam) (citing *Bazrowx v. Scott*, 136 F.3d 1053, 1054 (5th Cir. 1998) (per curiam)); *see also* FED. R. CIV. P. 15(a)(2) (providing that "[t]he court should freely give leave when justice

so requires"). Plaintiff has not amended his Complaint thus far, and as noted earlier, Plaintiff did not file responsive briefing to the Motions. Because this is the Court's first opportunity to assess the sufficiency of Plaintiff's claims, the Court recommends granting Plaintiff leave to amend his claims against Sgt. Agan and Lt. West.

## IV. RECOMMENDATION

For the reasons set forth above, the Court recommends:

1. the Detention Facility's Motion to Dismiss (Dkt. 14) be **GRANTED**, and Plaintiff's claims against the Detention Facility be **DISMISSED WITH PREJUDICE**;

2. the Officers' Motion to Dismiss (Dkt. 15) be **GRANTED IN PART** as follows:

    a. Plaintiff's claims against Sgt. Agan and Lt. West be **DISMISSED WITHOUT PREJUDICE**; and

    b. Plaintiff be granted leave to amend his claims against Sgt. Agan and Lt. West, with the amended pleading due no later than fourteen (14) days after entry of a Memorandum Adopting this Report and Recommendation, if any.

Within fourteen (14) days after service of the magistrate judge's report, any party may serve and file written objections to the findings and recommendations of the magistrate judge. 28 U.S.C. § 636(b)(1)(C).

A party is entitled to a *de novo* review by the district court of the findings and conclusions contained in this report only if specific objections are made, and failure to timely file written objections to any proposed findings, conclusions, and recommendations contained in this report shall bar an aggrieved party from appellate review of those factual findings and legal conclusions accepted by the district court, except on grounds of plain error, provided that the party has been served with notice that such consequences will result from a failure to object. *Id.*; *Thomas v. Arn*,

474 U.S. 140 (1985); *Douglass v. United Servs. Auto Ass'n*, 79 F.3d 1415, 1417 (5th Cir. 1996) (en banc), *superseded by statute on other grounds*, 28 U.S.C. § 636(b)(1) (extending the time to file objections from ten (10) to fourteen (14) days).

**So ORDERED and SIGNED this 1st day of September, 2022.**

_____
KIMBERLY C. PRIEST JOHNSON
UNITED STATES MAGISTRATE JUDGE